## PATTON *vs.* GILMER ET AL.

[ACTION FOR BREACH OF CONTRACT.]

1. *Manufacture of arms by or for State.*—There is no constitutional provision, State or Federal, which prohibits the manufacture of arms by a State, or the making of a contract with other persons for their manufacture.

2. *Validity of contract between State and Alabama Arms Manufacturing*

*Company.*—Neither the contract between the State of Alabama and the *Alabama Arms Manufacturing Company*, nor the act of the legislature under which that contract was made, (Session Acts, 1861, p. 75,) shows on its face that the arms were to be manufactured during the late war, or that the contract was otherwise illegal and void; consequently, the court can not, on demurrer to a complaint for a breach of the contract, declare the contract void.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. ABRAM MARTIN, special judge, selected by the parties on account of the incompetency of the presiding circuit judge.

THIS action was brought by Robert M. Patton, as the governor of the State of Alabama, against Wm. B. Gilmer and others, and was commenced on the 10th day of November, 1866. The complaint was in the following words:

"The plaintiff, as governor of the State of Alabama, claims of the defendants six hundred thousand dollars, for the breach of the condition of a bond, made by the defendants on the 20th day of March, A. D. 1862, payable to the plaintiff, in the sum of five hundred thousand dollars, with condition that the Alabama Arms Manufacturing Company shall well and truly keep and perform all the stipulations of the contract entered into by the said company with John Gill Shorter, as the governor of the State of Alabama, on the 20th day of March, 1862, of which the following is a copy," setting out the contract. "And the plaintiff says, that the conditions of the said bond have been broken, in this : 1st, that the said Alabama Arms Manufacturing Company has not established, within the limits of this State, an armory, or manufactory for the making of arms, although a reasonable time for doing so has long elapsed ; 2d, that the said company has not made and delivered any fire-arms to the State of Alabama, according to the terms of the said contract; 3d, that the said company has not returned, or paid back to the State of Alabama, the amount of money received by the said company from the said State, or any part thereof; to the damage of the plaintiff as above stated."

The following is a copy of the contract referred to :

"Memorandum of a contract, entered into the 20th March,

1862, between John Gill Shorter, governor of the State of Alabama, and the Alabama Arms Manufacturing Company, a body corporate for the manufacture of arms in the State of Alabama. The said John Gill Shorter, governor as aforesaid, hereby agrees and stipulates upon his part, and in behalf of said State of Alabama, that he will deliver and advance to the said Alabama Arms Manufacturing Company the sum of two hundred and fifty thousand dollars in Alabama State bonds, having ten years to run, and bearing interest at the rate of eight per cent. per annum, and having interest coupons attached, payable semi-annually, at their par value; for which the said company shall execute their bond, with satisfactory personal security, to be approved by the said governor, conditioned to perform on their part the stipulations of this contract, or to return the said amount on failure thereof. In consideration of the advance aforesaid, the said Alabama Arms Manufacturing Company stipulate and agree on their part, that they will establish within the limits of the State of Alabama an armory, as soon as practicable; and that they will make and deliver to the State of Alabama, as soon as practicable, or within a reasonable time, in full payment and satisfaction of the said sum so advanced, fire-arms of the following character and description, and at the prices herein fixed—that is to say, a gun, in outward finish like the Enfield rifle-musket, with sword bayonet, and in interior finish to conform to the standard of the Confederate States of America, at the price of thirty-five dollars each; said arms to be inspected by a competent and impartial officer, to be appointed by the State of Alabama, and to be delivered at the armory, or at the river landing or railroad station nearest the same, properly boxed, and with the usual findings, at the election of the State. It is further stipulated between the parties, as follows: The said armory shall be located in the State of Alabama, and shall not be removed beyond the said State, or abandoned, under the penalty of forfeiture to the State, until full payment and satisfaction shall have been made of the funds advanced by the State to the company under this contract. In all settlements between the said State and the said company, the said State

shall be allowed interest, at the rate of eight per cent. per annum, upon all advances made to the company, computing from the date of the advance. No contract for the manufacture of arms shall be made by the said company, with any individual or corporation, other than the said State of Alabama, unless with the consent of the governor of said State for the time being, until the said company shall have fully complied and performed the said contract with said State; and the said State shall always enjoy the right and privilege, over all others, of contracting for, or purchasing arms of said company, at a fair market price; the said State being only required to give reasonable notice of the kind and quality of arms it may require. In the event the said armory, its fixtures, and materials, shall be permanently captured or destroyed by the enemy, then any loss which may occur from such capture or destruction, to the extent of the advance made by the said State, shall be sustained by the said State; and the stipulations of the said contract herein contained to furnish arms shall cease, and be of no effect; and all unsettled matters of account, and all other matters not specially herein provided for between the said State and the said company, shall be adjusted and settled upon principles of equity. It is understood and agreed between the parties, that this contract is entered into in view of the provisions, and pursuant of the objects, of an act of the legislature of Alabama, approved December 7th, 1861, entitled 'An act to encourage the manufacture of fire-arms and munitions of war in this State.' It is further stipulated and agreed, that, in addition to the personal security to be given for the faithful performance of this contract by said company, the said company will make and execute a mortgage upon their armory, with the fixtures and machinery. In testimony whereof, the parties to this contract have hereunto set their hands, and affixed their seals in due form of law, the day of the date first above written."

(Signed by John Gill Shorter, as governor, and under the seal of the State; and by William B. Gilmer, as president, and John D. Phelan, as secretary of said corporation.)

The act of the legislature, under which this contract was made, and which was approved on the 7th December, 1861, is in these words :

"*An act* to encourage the manufacture of fire-arms and munitions of war in this State.

" SECTION 1. *Be it enacted by the senate and house of representatives of the State of Alabama in general assembly convened,* That the sum of two hundred and fifty thousand dollars, out of any money in the treasury not otherwise appropriated, be, and the same is hereby, appropriated and placed under the control of the governor, and subject to his warrant, for the purposes hereinafter specified.

"SEC. 2. *Be it further enacted,* That if any individual or company shall hereafter propose to manufacture fire-arms in this State, the governor is hereby authorized to advance to such individual or company such portion of said sum as he may deem advisable, and may take security for the return of said sum so advanced, or may contract with said individual or company to receive of them, in lieu of said sum advanced, *fire-arms* to be manufactured by them, of such kind, quality and description as he may designate and approve of; in all cases taking from such individual or company bond with approved security for the faithful performance of their contract.

" SEC. 3. *Be it further enacted,* That in like manner, and under the same restrictions, the further sum of fifty thousand dollars is hereby appropriated to encourage the manufacture and preparation of powder, saltpetre, sulphur and lead."—Session Acts, 1861, p. 75.

The defendants demurred to the complaint, and assigned the following as grounds of demurrer : " 1st, that it appears, in and by said complaint, that the only consideration of the contract, for the faithful performance of which the bond in the complaint mentioned was given, was the issuance of the bonds of the State of Alabama, for the sum of two hundred and fifty thousand dollars, in aid of the late war, which said consideration was illegal and void ; 2d, that it appears from the said complaint, that the contract and bond therein mentioned and set up was made and executed in aid

of the late war, and are illegal and void." The court sustained the demurrer, and its ruling thereon is now assigned as error.

JOHN W. A. SANFORD, Attorney-General, and STONE, CLOPTON & CLANTON, for appellant.

WATTS & TROY, and ELMORE, KEYES & MORRISSETT, contra.

BYRD, J.—Without having the aid of an argument at the bar, or of a brief from counsel, we propose to dispose of the questions raised by the assignments of error, on the record in this important cause.

We are not aware of any provision of the State or Federal constitution, which inhibits the manufacture of fire-arms by the States, or the making a contract therefor. The contract sued on is founded on an act of the general assembly of the State, approved December 7, 1861, (Pamph. Acts, p. 75,) and which was again approved by an ordinance of the State convention of 1865.—Vide Ordinance No. 26. The defendants in the court below sought by a demurrer to raise the question of the illegality of the consideration and obligations of the contract, by substantially averring that they were contracted in aid of the late war against the national government. We suppose that it is contended that the contract was in violation of the public policy of the government of the United States, as the supreme government of this country, and that it is therefore illegal and void.

The illegality of the consideration or obligations of a contract may be raised by way of demurrer, whenever it is clearly apparent on the face of the complaint; but, when it is not, the party is put to his plea.—1 Chitty's Pleadings, 311, 484a.

We are of opinion that, upon the face of the complaint, and of the act of the 7th December, 1861, it is not clear that the contract was illegal, or that it was entered into with the intention to give aid to the war then being waged between the United States and the belligerent southern States. Neither the law which authorized the contract, nor the contract itself, required that the arms should be made during the war, nor within any specified time. The contract-

ing parties *may* still have the right to insist on the performance of the stipulations of the original contract, *if it were legal;* and if performed, the defendants would be discharged from any liability on the bond executed by them.

But upon these questions we express no opinion, further than to say that the question of the illegality of the contract is not so clearly apparent on the face of the complaint as to authorize a court to sustain a demurrer on that ground, or to pass upon the question sought thereby to be raised. The court below should have overruled the demurrer. In so holding, we do not intend to intimate that we consider the complaint good, or that any action can be maintained on the contract set out. We confine ourselves *strictly*, as the court below was bound to do, to the assignments specifically made by the demurrer. If a contract is made, which, by one construction, would be void for illegality, and by another would be valid, the latter would be adopted, in order to give effect to the contract.

If hereafter, under an appropriate plea, the evidence should satisfy a jury that the intention of the parties was in violation of law, or of public policy, then the court would be called upon to instruct the jury as to the law in such a case; and may be called upon to charge them upon the effect of the evidence introduced on the trial as to such intention, as well as what *constitutes such an illegality in a contract as will render it void.*

We do not suppose that the power of a State to issue bonds will be questioned; but we do not think that the question of the authority of the governor to issue the bonds of the State, instead of paying the money appropriated by the act of December 7th, 1861, is raised by either of the grounds of demurrer, and we shall not therefore consider it.

For the error pointed out, the judgment of the circuit court is reversed, and the cause remanded.